UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| CHARLES BLACK,<br><br>     Plaintiff,<br><br>vs.<br><br>FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, an Agency of the State of Florida, and ASHLEY REAGLE, in his individual capacity,<br><br>     Defendant. | CASE NO. 4:23-cv-00491-AW-MAF |

## AMENDED COMPLAINT FOR DAMAGES

Plaintiff sue Defendants and allege as follows:

### Jurisdiction

1. This is an action for damages within the jurisdiction of this court.

2. This Court has jurisdiction over the federal law claims raised pursuant to Article V, Section 5(b) of the Florida Constitution.

3. Venue is proper in this Court because the wrongful acts took place here.

4. Notice of claim has been served pursuant to § 768.28, Florida Statutes and the time for honoring the claim has expired without action.

5. All conditions precedent have been satisfied or waived.

### Parties

6. At all times material hereto, CHARLES BLACK, was a resident of Florida, residing in Leon County, Florida.

7.  At all times material hereto, Defendant DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES (DHSMV) was an agency of the State of Florida, with its headquarters in Leon County, Florida. DHSMV is the parent agency of the Florida Highway Patrol (FHP).

8.  At all times material hereto, Defendant ASHLEY REAGLE was a law enforcement officer employed by FHP. He is sued individually.

9.  At all times material hereto, Defendant Reagle acted under color of law.

### Common Allegations of Fact

Plaintiffs re-allege the above allegations and further allege as follows:

10. On or about February 6, 2021, Charles Black, Jr. was operating his personal motor vehicle, a gray 2020 Mitsubishi Outlander, with a Missisippi tag, number RAN4356, in Tallahassee, Florida.

11. Black had gone to Whataburger to pick up food.

12. At approximately 1:00 a.m., Black was returning to the home of his girlfriend.

13. On this date and time, Florida Highway Patrol Trooper Ashley Reagle came up behind Black and turned on his lights and siren.

14. Defendant Reagle would have seen Black's tag state and number.

15. Black pulled near his girlfriend's apartment hoping she would see him there.

16. Defendant Reagle stopped Black's car, confronting him with a loaded and leveled firearm. Other troopers joined Reagle and did the same.

17. Reagle offered no explanation for the stop but simply shouted orders.

18. Black, a college student who had been attending college in California on a golf

scholarship was understandably frightened and believed he could be killed.

19. Black stepped from his car entirely compliant and deliberately moved slowly, unaggressively, with his hands raised to show he had no weapon.

20. There was no basis to believe Black was armed or had access to a weapon.

21.  Black, quickly but trembling and crying, obeyed all orders but repeatedly asked what he was being stopped for, without a response from Reagle.

22. Black repeatedly asked why he was stopped and said that they must have the wrong person and that he had done nothing wrong.

23. Trooper Reagle continued to keep Mr. Black at gunpoint for about 30 minutes to one hour until a Deputy arrived from the Leon County Sheriff's Office (LCSO) to tell Reagle that Black was the wrong person.

24. The vehicle sought, apparently on a "high-risk" stop, had a South Carolina tag and a different tag number.

25. Officers present mentioned the car had the wrong tag.

26. The armed stop was unconstitutional and tortious and dangerous in that it unnecessarily threatened Black's life.

27. The stop was not reasonable based on the information available to officers at the time of the stop.

28. Black continued to be detained even though it would have been clear to Reagle that his license tag was the wrong number and the wrong state.

29. Black knew that he was being unjustifiably detained but followed all instructions because he believed he could be killed at any moment.

30. The circumstances of the arrest indicate that Black was racially profiled.

31. Young, unarmed American Black men are killed by law enforcement officers in the United States at a rate that is substantially higher than the rate for young unarmed men of any other racial or ethnic category.

32. Charles Black was keenly aware of these statistics which increased his fear.

33. Reagle and other officers present behaved in an unprofessional manner in that they made no effort to reassure Mr. Black that they meant him no harm.

34. Mr. Black has had nightmares and panic episodes ever since that night.

35. Mr. Black, through his attorney, sent a citizen's complaint to both the Office of General Counsel of the Florida Department of Highway Safety and Motor Vehicles and also the local FHP Troop without receiving a response.

36. Mr. Black has been obliged to retain an attorney to vindicate his rights and will be obligated to the attorney for a reasonable fee and costs.

WHEREFORE, Plaintiff seeks damages as noted below.

### Causes of Action

**I.   False Arrest (DHSMV)**

The General Allegations of the Complaint are incorporated herein.

37. This is an action for common law false arrest.

38. Plaintiff is entitled to relief against Defendant DHSMV in that Trooper Reagle, acting under color of law and without probable cause, restrained Plaintiff against his consent so that Plaintiff was deprived of his liberty.

39. Plaintiff was further restrained, in that agents, servants or employees of

Defendant used words to the effect that Plaintiff was under arrest which implied threats of force, as well as actual force, and immediate means of coercion against the Plaintiff, so that the Plaintiff was restrained and deprived of liberty as effectively as he would have been behind prison bars.

40. By reason of the aforesaid wrongful acts, Plaintiff was deprived of liberty, subjected to indignity, expense, loss of income, humiliation, pain and suffering, mental anguish, was held up to scorn and ridicule, was injured in his character and reputation, was prevented from attending his usual business and avocation, and has been otherwise injured now and in the future.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## II.    False Arrest under 42 U.S.C. § 1983 (Ashley Reagle)

Plaintiff re-alleges the Common Allegations as if fully set forth herein.

41. Plaintiff is entitled to relief against Defendant Reagle in that he intentionally and unlawfully caused Plaintiff to be imprisoned against his will in violation of the Fourth Amendment to the U.S. Constitution, so Plaintiff was deprived of his liberty without lawful authority; and maintained such deprivation.

42. Plaintiff was further restrained, in that Defendants used words to the effect that Plaintiff was under arrest or was not free to move freely which implied threats of force, as well as actual force, and immediate means of coercion against the Plaintiff, so that the Plaintiff were restrained and deprived of liberty at all times as effectively as if behind prison bars.

43. Defendant Reagle clearly saw that the tag number and state were not

consistent with the vehicle sought for a high-risk stop.

44. Defendant Reagle clearly knew that the stop was improper but followed through with the stop while displaying deadly force regardless.

45. Rather than to admit an error, Defendant Reagle decided to just wait for the Leon County Deputy to tell him Black was the wrong person.

46. Defendant misused his power, possessed by virtue of state law and made possible only because Defendants were clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. Section 1983.

47. The foregoing actions of all Defendants were in deliberate disregard of Plaintiff's rights under the Constitution of the United States.

48. Defendant Reagle, acted with actual and legal malice as is set out herein, Plaintiff is entitled to a substantial award of punitive damages as to him.

49. As a direct and proximate result of these wrongful acts, Plaintiff has suffered pecuniary loss, pain, shock, humiliation, emotional distress, embarrassment, loss of liberty, loss of self-esteem, disgrace, and loss of enjoyment of life, was prevented and continues to be prevented from obtaining the full enjoyment of life and will continue to suffer such damages in the future.

50. Plaintiff has been forced to retain counsel to represent him to vindicate his rights. Pursuant to the provisions of 42 U.S.C. Section 1988, Plaintiff is entitled to an award of reasonable attorney's fees.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### III.   Intentional Infliction of Emotional Distress

Plaintiff re-alleges the Common Allegations as if fully set forth herein.

51.   Trooper Reagle's conduct was intentional, extreme and outrageous.

52.   Trooper Reagle knew that he had made the stop in error based on the information he had received from Leon County Sheriff's Deputies.

53.   Trooper Reagle didn't want to admit a mistake so he continued to hold Black at gunpoint until the Leon County Deputy told him to let Black go.

54.   During this time, Black was clearly in great mental distress as evidenced by trembling and crying for fear of the firearms that were being leveled at him.

55.   Even as Defendant Reagle was holding his firearm on Black, officers mentioned that they were looking for a car with a South Carolina tag, while the car that Black was driving had a Mississippi tag.

56.   Despite this fact, Defendant Reagle persisted in pointing his weapon at Black who was clearly hysterical with fear.

57.   The conduct described herein, including the leveling of a loaded firearm at Mr. Black during an unjustified stop, constitutes intentional outrageous conduct that would shock the conscience of a reasonable person, and constitutes the actionable tort of intentional infliction of emotional distress.

58.   As a direct and proximate result of the above unlawful acts, Plaintiff has sustained emotional pain and suffering, humiliation, anxiety, embarrassment, and distress, and is therefore entitled to relief under the above facts.

**<u>Prayer for Relief</u>**

WHEREFORE, the Plaintiff respectfully seeks judgment as follows:

A. Compensatory damages against each of the defendants herein;

B. Punitive damages against the individual defendants under federal law;

C. Attorney's fees pursuant to 42 U.S.C. §§ 1988 and costs;

D. A trial by jury on all issues so triable;

E. Such further relief as the Court deems just and proper.

Respectfully submitted on 12/15/23,    *s/ James V. Cook*
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

ATTORNEY FOR PLAINTIFF